UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAIR HAVEN DEVELOPMENT CORP. : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. |
| : | 3:03 CV 1069 (CFD) |
| JOHN DeSTEFANO, : | |
| ANDREW J. RIZZO, JR., and : | |
| CITY OF NEW HAVEN : | |
|     Defendants. : | |

## RULING ON MOTION TO DISCHARGE NOTICES OF LIS PENDENS

On June 18, 2003, the plaintiff, Fair Haven Development Corporation ("Fair Haven"), brought an action against the City of New Haven ("the City") and two of its officials: John DeStefano, the Mayor; and Andrew Rizzo, the Executive Director of the City's Livable City Initiative (collectively "the defendants"). Fair Haven, a nonprofit organization engaged in rehabilitating urban housing stock for affordable housing, claims that the defendants violated its rights under the First and Fourteenth Amendments to the United States Constitution by refusing to permit it to acquire nine specific parcels of property owned by the City.[1] Fair Haven claims that it was treated differently than other developers because of a political dispute between a member of the New Haven Board of Alderman and a member of Fair Haven's Board of Directors, in violation of the Equal Protection Clause of the Fourteenth Amendment and its rights to free speech and association under the First Amendment. Fair Haven brings its claims pursuant

---

[1] Although the complaint identified twelve parcels of property as subject to this suit, later submissions by the parties revealed that three of those properties are no longer owned by the City or subject to Fair Haven's lis pendens. Consequently, the nine properties that are subject to Fair Haven's action, and subject to a lis pendens stemming from this action, are: 180 Poplar Street; 371-73 Ferry Street; 76 Haven Street; 233 Blatchley Avenue; 145 Grand Avenue; 139 Lloyd Street; 118-20 Lloyd Street;122-24 Lloyd Street; and 309 Blatchley Avenue.

1

to 18 U.S.C. § 1983, and seeks damages and injunctive relief.

On July 15, 2003, Fair Haven filed notices of lis pendens against those nine parcels of property on the land records for the City pursuant to Conn. Gen. Stat. § 52-325. On January 24, 2005, the defendants filed a motion for discharge of the notices lis pendens **[Doc. # 12]**. On March 29, 2005, the court held an evidentiary hearing on the defendants' motion. For the following reasons, the motion for discharge of the notices of lis pendens is **GRANTED**.

**I    Background**

For purposes of deciding the instant motion only, the Court makes the following factual findings based on the evidence and testimony submitted at the probable cause hearing:[2] Fair Haven is a nonprofit organization that acquires urban housing stock in the City of New Haven, including properties located in the Fair Haven neighborhood, rehabilitates them and conveys them to low income families. The Livable City Initiative is an effort by the City of New Haven to improve housing for its residents. Between 1995 and 2002 Fair Haven received approximately $734,000 in federal funding through participation in the Livable City Initiative. Between 1995 and 2001, however, Fair Haven completed one or two property rehabilitations through the Livable City Initiative. On various dates between June 6, 2001, and August 8, 2002, Fair Haven applied to the City, again through its Livable City Initiative, to purchase several properties in order to rehabilitate them into affordable housing.

At some point in 2002, however, the City stopped providing funding or conveying housing stock to Fair Haven through its Livable City Initiative because of an investigation then

---

[2]At a hearing on a motion to discharge lis pendens, the burden is on the plaintiff to establish that there is probable cause to sustain the validity of the claim. Conn. Gen. Stat. 52-325b.

being conducted by Rizzo.  On February 6, 2003, Rizzo issued a report on Fair Haven in which he determined that, based on seven factual findings, "the City of New Haven will no longer provide any funds, nor act to dispose of any property, to Fair Haven Development Corporation."  Among the findings were that Fair Haven had not developed properties on a timely basis, submitted incomplete applications, had made "questionable" use of funds, and had conveyed one of the two properties it have renovated to the daughter of a Fair Haven Board member.  Rizzo forwarded this report to three members of the New Haven Board of Alderman on February 10, 2003:  Robin Kroogman, Edward Mattison and Juan Candeleria.[3]  At the probable cause hearing, Rizzo testified that his investigation leading to this report's conclusions took from May 2002 until February 2003.  Fair Haven's applications for property acquisition were put on hold during his investigation, as a result of the information Rizzo obtained during the course of investigation.

Fair Haven never executed a contract with the City to purchase any of the nine properties, and it has never obtained a legal interest or right to those properties.  Fair Haven now alleges that the defendants have violated its constitutional rights by precluding it from obtaining a legal interest in or right to the nine properties subject to this action.  In the pending motion, the defendants claim that, due to the lis pendens filed by Fair Haven, they have been unable to sell or otherwise dispose of the nine properties.  Consequently, the defendants now seek to discharge those lis pendens.

**II       Standard of Review**

---

[3] Kroogman is the member of the Board of Alderman who had a dispute with Fair Haven's Board member, Raul Davila, in the spring of 2002.  How that claimed dispute is related to the allegations of the complaint summarized at page 10, *infra*, is unclear and no evidence was presented at the hearing on it other than that Kroogman was one of the three members of the Board of Alderman who had requested that Rizzo evaluate Fair Haven.

"The purpose of the lis pendens . . . [is] to give constructive notice to persons seeking to purchase or encumber property after the recording of a lien or the commencement of a [law] suit." First Constitution Bank v. Harbor Village Ltd. Partnership., 37 Conn.App. 698, 704, 657 A.2d 1110 (1995) (quotation marks omitted).  Pursuant to Connecticut law, "[i]f the action for which notice of lis pendens was recorded, is pending before any court, the property owner may at any time . . . move that such notice of lis pendens be discharged of record."[4]  Conn. Gen. Stat. § 52-325a(c).  At a hearing on such a motion, "the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim . . . ."  Conn. Gen. Stat. § 52-325b(a). Therefore, "[u]pon consideration of the facts before it, the court or judge may: (1) deny the motion if "probable cause to sustain the validity of the claim is established"; or (2) order such notice of lis pendens discharged of record if "probable cause to sustain the validity of the plaintiff's claim is not established."  § 52-325b(b).

"Probable cause is a bona fide belief in the existence of facts essential under the law for the action and such would warrant a man of ordinary caution, prudence and judgment under the circumstances, in entertaining it . . .  Probable cause is a flexible common sense standard . . . ." Dufraine v. Commission on Human Rights and Opportunities, 236 Conn. 250, 261, 673 A.2d 101 (1996) (emphasis omitted; quotation marks omitted).  "The plaintiff does not have to establish that [s]he will prevail, only that there is probable cause to sustain the validity of the claim . . .

---

[4]Neither party disputes that Connecticut law controls the resolution of the defendants' motion. See, e.g., Van Gemert v. Boeing Co., 553 F.2d 812, 813 (2d Cir. 1977) ("It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law"); see also Fed. R. Civ. P. 64, advisory committee notes ("No rule concerning lis pendens is stated, for this would appear to be a matter of substantive law affecting State laws of property"); F.D.I.C. v. Isban, 870 F.Supp. 24, 28 (D.Conn. 1994)(applying Connecticut law to a motion to discharge a notice of lis pendens).

The court's role in such a hearing is to determine probable success by weighing probabilities . . ." Pischel v. TKPK, Ltd., 34 Conn.App. 22, 24, 640 A.2d 125 (1994) (citation omitted; quotation marks omitted).

A court must be mindful that "the provisions of [§ 52-325] should be liberally construed to implement reasonably and fairly its remedial intent of giving notice of claims pertaining to the real property which is the subject of the litigation." Manaker v. Manaker, 11 Conn.App. 653, 660-61, 528 A.2d 1170 (1987).  Thus, "Connecticut courts have interpreted § 52-325(b)(3)'s language as requiring the denial of motions to discharge a lis pendens where the courts' disposition of the main cause of action could affect in some manner an interest in property . . . ." F.D.I.C. v. Isban, 870 F.Supp. 24, 29 (D.Conn. 1994) (citations omitted).

**III    Discussion**

A) Adequacy of Remedy

Pursuant to Conn. Gen. Stat. § 52-325, a notice of lis pendens may validly be filed only "if the action is intended to affect real property."  That phrase is defined in 52-325(b) as: "(1) actions whose object and purpose is to determine the title or rights of the parties in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; [or] (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property."

Fair Haven's action is not one to "determine the title or rights of the parties in, to, under or over some particular real property." Rather, it is an action alleging constitutional violations stemming from the application process used by the City in its Livable City Initiative, and the

properties now owned by the City only would be implicated if the Court found that Fair Haven's rights had been violated and it was entitled to relief.  Thus, subsection (b)(1) is not applicable. Compare Evans v. Evans, 2003 WL 21977103 at *2 (Conn. Super. Ct., Aug. 1, 2003) (denying motion to discharge lis pendens filed by brother of property owner, who "established by his pleadings and his testimony is one in which he has a definite equitable interest").

Because Fair Haven has never alleged that it is trying to "establish or enforce [a] previously acquired interest" in the subject properties, subsection (b)(2) also is not implicated. Compare Coveland Farms, Inc. v. Perrotta, 2002 WL 31502035 at *5 (Conn. Super. Ct., Oct. 25, 2002) (denying motion to discharge lis pendens when the plaintiff was seeking to enforce a previously entered into "Amended Easement Agreement and the Stipulated Judgment").

In its complaint, Fair Haven claims that its rights to freedom of speech and association under the First Amendment were violated, as well as its right to equal protection of the law under the Fourteenth Amendment.  As to relief, Fair Haven seeks "compensatory damages, punitive damages, attorneys fees and costs," as well as "a temporary and permanent injunction requiring the City of New Haven forthwith to convey to it the aforesaid real property."  Although the action does not concern the parties' interests in the nine properties owned by the City, the relief requested in this action "may affect" the parties' interests in the subject properties.  The defendants now challenge, however, Fair Haven's ability to obtain the relief sought–namely, a permanent injunction ordering the City to convey title to the nine properties to Fair Haven.  In other words, the defendants claim that, because Fair Haven cannot obtain the relief sought, this action for constitutional violations cannot be said to be one that "is intended to affect real

property" for purposes of § 52-325.[5]  Therefore, the question becomes whether Fair Haven has established "that there is probable cause to sustain the validity of [its] claim" for permanent injunctive relief Conn. Gen. Stat. 52-325b(b).

"Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989) (citing cases); see also Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57(1975) (the "basis" for injunctive relief "in the federal courts has always been irreparable harm and inadequacy of legal remedies")(quotations omitted); Martin v. Shell Oil Co., 180 F.Supp.2d 313, 323 (D.Conn. 2002); Fisher Scientific Co. v. City of New York, 812 F.Supp. 22, 26 (D.Conn. 1993).[6]  Here, Fair Haven has not demonstrated either the absence of an adequate remedy at law or irreparable harm if the permanent injunctive relief is not granted.

As to lack of an adequate remedy at law, the Court notes that Fair Haven has brought this action pursuant to 18 U.S.C. § 1983, which allows damages for constitutional violations.  At the probable cause hearing, the executive director of Fair Haven, James Welter II, acknowledged that Fair Haven was seeking damages as part of its suit, and that Fair Haven could calculate its

---

[5]Although Fair Haven requests both a temporary and a permanent injunction in the complaint, the Court construes the complaint as seeking only a permanent injunction.  This construction is based on the relief sought by the injunction: conveyance of title to property.  Moreover, Fair Haven does not seek temporary injunctive relief *prohibiting* the defendants from selling or disposing of those properties pending resolution of this action, but rather only seeks an injunction *compelling* the City to convey to Fair Haven the nine pieces of property.

[6]In addition, the Court is mindful that "a federal court should grant injunctive relief against a state or municipal official only in situations of most compelling necessity." Osuch v. Gregory, 303 F.Supp.2d 189, 194 (D.Conn. 2004) (quotations omitted).

damages, as its lost profits and opportunities could be established. Finally, Welter acknowledged that Fair Haven has not signed any "land disposition agreements" with the City on those houses. Taken together, the Court finds that, should Fair Haven prevail on its First and Fourth Amendment claims, damages would provide it with an adequate remedy at law.

As to the second prong, the Court finds that Fair Haven cannot demonstrate that, even if it is successful on its claims of constitutional violations, it will suffer irreparable harm if permanent injunctive relief is not granted. "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998));  accord Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 974-75 (2d Cir. 1989); Lawrence v. Wilder Richman Sec. Corp., 359 F.Supp.2d 161, 165 (D.Conn. 2005). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (citation and internal quotation marks omitted).

Fair Haven's concession that damages could provide adequate compensatory relief counsels strongly against a finding of irreparable harm. Compare Terry, 886 F.2d at 1362 ("Those women denied access [to clinics] cannot be compensated by money damages; injunctive relief alone can assure them the clinics' availability"). Moreover, in its complaint, Fair Haven stated that, "if the defendants are not enjoined from their said unconstitutional conduct, the plaintiff will be forced to close its operations and go out of business." At the probable cause hearing, however, Welter testified that Fair Haven has secured housing from other sources during

8

the pendency of this action, including properties at 260 James Street, 225 Lloyd Street and 198 James Street, and that it is still operating, notwithstanding this dispute. Indeed, although unsure as to the precise figures, Welter testified that Fair Haven has completed at least seven properties since 2002, two properties currently were undergoing rehabilitation, and there were three more projects "in the pipeline"; it is sustaining its operations and it is not imperative for Fair Haven to acquire the specific properties subject to this lawsuit. In addition, if Fair Haven were to be awarded damages, Welter testified that Fair Haven would be able to buy additional properties in the City for rehabilitation. Consequently, although it may suffer some harm if it is not awarded title to the specific properties underlying this action, the Court finds that Fair Haven cannot demonstrate that it will suffer irreparable harm.

  Without the ability to obtain the injunctive relief sought, this action cannot be said to be one that "is intended to affect real property" pursuant to Conn. Gen. Stat. § 52-325. Cf <u>Garcia v. Brooks Street Associates</u>, 209 Conn. 15, 22, 546 A.2d 275 (1988) ("Where, as here, a party to a pending action seeks only monetary damages that will not affect the title of the real estate owned by an adverse party, a notice of lis pendens is properly discharged as it no longer serves its purpose").

  B) <u>Probable Cause of Success</u>

  Even assuming, however, that permanent injunctive relief was an appropriate remedy in this case, the defendants are entitled to a discharge of the lis pendens because Fair Haven failed to establish "that there is probable cause to sustain the validity of [its] claim[s] . . . ." Conn. Gen. Stat. § 52-325b(a). Again, the complaint alleges that the defendants violated Fair Havens' rights under the First and Fourteenth Amendments by refusing to permit it to acquire nine specific

parcels of property owned by the City.  In regard to equal protection under the Fourteenth Amendment, Fair Haven claims that the defendants conveyed properties to other groups after the time it began to refuse to convey properties to it, and that the defendants had "no rational basis" for this disparate treatment.  As noted previously, however, Rizzo testified that the reasons that Fair Haven was not receiving any additional properties or money from the Livable City Initiative was because the organization had not developed properties on a timely basis, submitted incomplete applications, had made "questionable" use of funds and had conveyed one of the two properties it have renovated to the daughter of a Fair Haven Board member.  The Court credits that testimony, and finds that Fair Haven has failed to establish probable cause to sustain the validity of its equal protection claim.

      The complaint also alleges that the defendants violated Fair Haven's right to free speech and association when it refused to convey any additional properties to the organization as "political punishment" for its failure to "control" Raul Avila, a member of the Board of Alderman and an advisor to Fair Haven.  More specifically, the complaint alleges that Mayor DeStefano, who is a "political enemy" of Alderman Avila, "stated to a member of the plaintiff's Board of Directors . . . that he wanted her vote on the [town Democratic] committee and that if he did not receive it he would remember that fact."  The complaint also alleges that both Rizzo and Mayor DeStefano's deputy stated to Fair Haven's Chief Executive Officer and Director of Operations that if he did not "rein in" and control Alderman Avila, the organization would "get nothing from this administration" and all of its funds from the City would be cut off.  These are mere allegations in the complaint, however, and Fair Haven failed to present any significant evidence which supports these allegations and could establish probable cause to sustain the validity of its

First Amendment claim.

At the hearing, the defendants also challenged Fair Haven's claim that it had formally applied for all nine properties subject to the lis pendens. Through papers submitted at the hearing and testimony from Welter, it appears that Fair Haven only submitted applications to purchase some of the nine properties now subjected to lis pendens. The failure to submit applications on the remaining properties, and provide proof of such applications at the probable cause hearing, further counsels against a finding of probable cause in regard to the validity of the claims. In any event, because Fair Haven has not demonstrated probable cause as to the substantive merits of its claims, the Court need not determine precisely for which properties Fair Haven did submit applications.

**IV    Conclusion**

Fair Haven has not demonstrated that there is probable cause to believe that it may obtain the permanent injunctive relief or to sustain the validity of its claims. Consequently, the defendants' motion to discharge Fair Haven's notices of lis pendens **[Doc. # 12]** is **GRANTED**.[7]

SO ORDERED this 9th day of August 2005, at Hartford, Connecticut.

          /s/ CFD
          **CHRISTOPHER F. DRONEY**
          **UNITED STATES DISTRICT JUDGE**

---

[7] In their memoranda in support of their motion for discharge, the defendants also argue that, as a matter of law, property owned by a municipality cannot be subject to lis pendens. Because the notices of lis pendens are discharged on alternative grounds, the Court need not address this argument.